Good morning. My name is Tim Green and I'm the attorney for Mr. Calsado. I'd like to reserve two minutes for rebuttal. Mr. Calsado is a native and citizen of the Philippines. He entered the United States on a second preference visa as the unmarried son of his legal permanent resident mother. He was found deportable because of the fact that he had stated that he was unmarried, when in fact, according to the Immigration Service, he was married on November 8, 1993. It's our position that Mr. Calsado had told the truth, that in fact he was married. I mean, he was not married, and the reason why is because the evidence that the service has is not evidence of a bona fide marriage. And I'm talking about it's not facially a marriage. The service has evidence that on August 9, the putative wife of Mr. Calsado was married to somebody else. So that was not a bona fide ceremony. It was a bigamous situation. Then the actual certificate was entered on November 8, 1993, filed in City Hall in the Philippines, and the certificate says that the parties were present on that date to solemnize the marriage, when in fact, they weren't. The service ironically agrees with that position. The service cross-examined Ms. Fidel in the proceedings before the IJ and said, don't you recognize that you're purporting that you were married to Mr. Calsado, when in fact you weren't. Isn't that correct? You weren't married to him because on November 8, you weren't even in the Philippines. So that's the ironic situation here. If Mr. Calsado had said to the counselor officer that he was married, then actually he would have been lying, even by the service's position, because the service has indicated there wasn't a bona fide marriage. At some point in these proceedings, Rosalinda applies to have him get a visa based on the fact that they're married? That's correct. What's the timing relationship between the visa petition saying he wasn't married and the application from Rosalinda saying that they were? She filed her petition February of 1995, and the petition that had been filed on Mr. Calsado's behalf, I think was filed back in 1989, give or take a year, and he was actually approved in May of 1995. So he was approved as the unmarried son three months after she filed her petition. Now his contention is that he wasn't talking to her about, although they talked on occasion after the marriage ceremony fell through, because of the fact that she found out that she had a, when he found out that she was in a vigorous relationship, he basically cut off his relationship with her except for correspondence once in a while, because she was a good family friend. So, and his testimony is plausible. With friends like this, you don't need enemies. Yeah, exactly, exactly. And the point is, is that he wasn't, and let's assume that he wasn't, for the sake of argument, that he wasn't quite candid with the immigration judge. Let's assume that she did tell him that she had filed this petition. The How can he say that he's the, that he's married when, in fact, he's not? He doesn't have control over what she's doing. I mean... The immigration judge found everyone who testified on behalf of this application inherently incredible. Right. And what kind of deference do we owe to that determination? Well, the court does owe... I mean, this judge saw the witnesses, listened to their testimony, compared their testimony to the written documentation and the kind of complicated history here, and said, none of these people are telling the truth. But the thing is, is that what he was focusing on is their story about what happened. Let's assume, for the sake of argument, that his, that we do, that the court does accept his findings here. The point is, the court never focused on the validity of the marriage itself. If we look at Mayo v. Shilton, in that case, the Eighth Circuit also found that the, that Jeremiah Mayo had not been, had shown a lack of candor before the INS. Nevertheless, they said, if there isn't a valid marriage, there isn't a valid marriage. And in this case, the immigration judge, there were, he made some significant errors in the way, in his, and I think I pointed them out in my brief. For example, he said that one of the had a birth certificate with Mr. Culsado as the father of her child. Well, that's not true at all. It wasn't him, it was somebody else. The other thing is, he found a pattern with the Culsado family, going back to the father, and he says there's a pattern to this family, which is totally unfair to Mr. Culsado, to, to immigration judge made a comment, well, he came in and he came in legally, but he had four children when he came in. That's not the intent of the law. I mean, he was digressing into, he actually, it looked like he was actually condemning the, the whole family as a unit, rather than focusing on the credibility of Mr. Culsado's testimony. When Rosalinda applied to have your client admitted as her spouse, what marriage date did they point to? November 8th. And that was the date in which the, the marriage was actually registered at City Hall in the Philippines. But the marriage certificate, or, well, it wasn't actually a, it wasn't actually a marriage license, it was a marriage contract. That document said that on this date, the parties appeared before the, before the, the Reverend Kabadding, and he, and, and the marriage was accordingly solemnized. Now, the, the point is, is that everybody agrees that the parties weren't there on that date. The service indicated that in their cross-examination. And they never disputed the contention that Rosalinda Fidel could not have been there because of the fact that she left the Philippines on September 6th, two months beforehand. So, there, there never was even, I mean, it's not even a facially valid document. If Mr. Culsado had said, yes, I am married, then the point is, is that he knows that, that he would, not only would he have lost on the, on the petition that his mother filed as an unmarried son because of the fact that he disclosed that, but the fact is, is that he wouldn't, he, he, if he's reasonably intelligent, I know I'm speculating as to what's going on in his mind, but he would, he would also realize that he never could come in as the husband of Ms. Fidel because of the fact that he didn't even have a valid marriage. Do you want to save some time for rebuttal? Oh, yes, I do. Okay. Thank you. We'll, we'll give you a minute or so. Thank you for your argument. Counsel? Good morning, Your Honors. The police, the court, Gary Pettinato, appearing on behalf of the Respondent. As the substantial evidence supports the Attorney General's position that at the time of Mr. Culsado obtained his visa, he willfully misrepresented a material fact. As the court just noted – Could you just take one step back there? Certainly, Your Honor. In order to show that the visa was procured through some kind of fraud or willful misrepresentation, do you have to prove that by clear and convincing evidence? Yes. That's the government on the burden. It's the would-be standard that we prove removability by clear and convincing evidence. The reason I'm stopping you is because I thought in your opening you had stated a different standard, and I just wanted to make sure we were on the same page. Well, it's whether the substantial evidence that the government proved by clear and convincing evidence that he's removable as charged. This is actually an old deportation case, so it was a deportability charge. Right. As the court is well aware, the immigration judge, after hearing Mr. Culsado and his four witnesses, found each and every one of them to be incredible. He described their testimony as very conflictive, unworthy of belief. Indeed, what he said, that he had been deluged with inconsistent, implausible, intentionally inconsistent, contradictory evidence, which is inherently improbable and lacks a ring of truth by witnesses who have admitted to a history of dishonesty. All of that pertains to how he got here or how he wanted to enter. Correct? Yes, Your Honor. Sort of the facts and so forth. So the other question that we have to be concerned with is whether there's any basis for him to stay however he got here. Isn't that correct? Well, there is – if – I'm talking about the waiver. The waiver, right. If the court finds that the government has met its burden in terms of the – establishing his deportability, then the court has to look next to see whether he should be granted the waiver under 241. And didn't the I.J. apply the wrong standard? On the waiver? Yes. No. They allege that the immigration judge applied the wrong standard, but in fact, he didn't. If you read his decision, you can see that he – essentially, the case law in support of the waiver says that the factors have to be balanced. And through case law, what they have to establish is hardship to a qualifying relative. Now, they take exception that the immigration judge a couple of times in the course of his decision mentioned extreme hardship. But I think when you read his decision on the waiver, which is about three or four pages in this 42-page decision, he essentially balances all of the factors and in the end concludes that the factors don't count. But how do we know – I mean, I agree with your characterization. He went through the factors, but then it seemed that he might have possibly been mixed up about the difference between the two sections in terms of one was extreme hardship, and the other is hardship, because he mentions extreme hardship. So how do we know he didn't benchmark the final kind of balancing of factors, taking that into consideration? Well, Judge Warren, who sits here in Seattle, has been on this Court for a very long – he's been an immigration judge for many, many years. The extreme hardship, which he did state in his – but I believe it's harmless error – does come from the suspension of deportation, the requirement in the suspension context. And that's the wrong standard. Well, hardship – hardship is a standard through the case law in this case. But not extreme hardship. But extreme hardship is not. Although, like I said, I think when you read his decision, he's not really emphasizing. And in any event, he's – Well, I don't – when you say not really emphasizing, we have to review what he's saying. And if – sometimes good judges make mistakes, particularly when you're talking about a changing standard. So if he applied the wrong standard or we can't tell what standard he applied, where does that leave us? Do we have to read – your suggestion, we kind of have to read through and say, well, he didn't really mean to say this, and you can patch this here. But I think that as a reviewing court, that puts us in somewhat of an awkward position, don't you think? I think just because at one time he said the word extreme hardship as opposed to hardship, I don't think that leads to the conclusion that he applied the extreme hardship, especially when he sets out the standard for balancing. He – he's very clear that under the case law, it's a balancing test of the positive and negative factors with discretion thrown in at the end. And I think he's well – Well, wait, because let me – let me differ with you somewhat in that characterization. He actually said extreme hardship three times, and one was fairly pointed. He said in talking about the mother, he says there's undoubtedly a degree of hardship, because he would no longer live near her and would not see her as often. The court does not find that this rises to the level of extreme hardship. That's a fairly direct finding in which he's conceding hardship, but saying he doesn't find it's extreme hardship. And then he goes on two other times to mention extreme hardship. So I'm not sure how we can, in effect, back out that finding. Well, in the end, Your Honor, even if he did make some sort of an error there, in the end, he says I wouldn't grant this waiver anyways in the exercise of discretion because That's right. But that doesn't solve the problem, because we have to look at eligibility first and then before we get to the exercise of discretion. That's our review. I think in this case, this Court should be particularly deferential to the immigration judge's finding on this waiver, because if this was a permanent rules case, as this Court, I believe, is familiar, you wouldn't have any jurisdiction over that matter. Because this is a transitional rules case, this waiver is reviewable under the permanent  The same waiver is not. I don't understand your argument. You're saying that because the law changed, we should apply a different standard? No. We should apply the incorrect review standard on review? No. I'm just saying in terms of It's a transitional rules case, so we have to apply the transitional rules, right? Right. So it's reviewable. That's all I'm saying. The only difference is it's reviewable or not reviewable. What I'm saying, I was just mentioning You're saying we should be especially deferential because there's been a change in the law that doesn't apply to this case? Well, in light of the fact that, essentially, I think Congress is now saying in these of discretionary waivers, they want deference to the Attorney General. But, you know, maybe I shouldn't have made the point, Your Honor. I just wanted to point out that. Let me ask you about something else. Going back to the first question, and accepting for the fact that the judge found all these people incredible, if, in fact, your argument is one of your arguments is that it doesn't make any difference whether this marriage was void or not. Now, if it's truly void, though, and it's a truthful statement, why isn't that important? Well, I don't think on the record it's clear whether it's a void or voidable marriage. I don't think there's a definitive answer to that. I'm asking a different question. I said, let's take a hypothetical, if it helps you. Let's say that there is a truly void marriage that comes out of the Philippines. A person comes into the United States and says that represents that he is, in fact, unmarried. And it's undisputed that the marriage is void. But then you have all this overlay of drama and inconsistent, and the I.J. says, I don't believe anybody. But if the statement is true on the application, why isn't that important? Well, no, I think in that case it may not be material. If, in fact, it truly was and it was clear that it wasn't, then it might not be material. Right. But even if he thought he might be married, didn't disclose all these oddities, if the statement was literally true, wouldn't that be important? It would be. But I think you have to look at the context of this. He was going into the consulate in Manila. He was applying for a visa as an unmarried son. So his marital status was of critical importance. Sure. He was he checked off on the visa application that he was, in fact, single, never married. That's in the record. And then because marital status is so important in these cases, they have to also affirm on their other State Department form, Statement of Marriage Applicant, that they understand that they can only get this visa if they're, in fact, they're single. Is the test subjective or objective? It's subjective. So if someone applies for a visa and they went through a wedding ceremony and in the visa application they say not married, and they learn the next day that the person they purportedly married had been married to three other people at the same time, thus it was bigamous and thus under the law of most nations that marriage was void, we would still say you don't get your visa because at the moment you filled out that application, you were subjectively not telling the truth. Is that the government's position? Well, I assume it is, Your Honor. But I assume in a case like you're talking about, it would come to light eventually that, in fact, it was definitively a void, avoidable marriage, and that the INS would backtrack from its position that there was a misrepresentation. Well, this leads to my curiosity about this is because, as you said, the fact of marriage, the legal fact of marriage is the critical component. And we actually don't know whether or not that fact had been established. And your argument is it doesn't matter, but it would seem to me the way the regulations are set up, the legal status of the marriage would actually be fairly important. It would. Regardless of the intent. If you had intent to deceive, didn't disclose all of these ceremonies, whatever, the critical component is the validity of the marriage at the time, right? It is, Your Honor. But I think you can't – you'd be making a but-for test if you strictly looked at it that way. And I think you also have to look at the fact that the burden of proof was on him. Essentially what he's done here is because he failed to be truthful about this very bizarre situation or set of circumstances, as you call it, drama, the drama that surrounded that marriage. He's essentially put himself in the position to say, okay, I'm going to be the one calling the shots here as to what information the INS should have in determining my eligibility for this visa. I'm going to conceal and not disclose all of the drama related to this and let the INS do an investigation and determine whether that marriage is valid. And this is a case where he had the burden of proving that he was eligible for the visa, and yet he prevented the INS from being able to really do an investigation and take a look around the circumstances. He made that call unfairly. Okay. We're a little over your time. I'm sorry. But our questions took you over. Thank you very much for your argument. Revell? Is it objective or subjective? Yeah, I was about to say, it's objective. So the United States government has no interest in ensuring that people who apply for visas are telling the truth to the best of their knowledge when they apply? They are if what they say is material. If we look at the Forbes case, for example, Forbes v. INS, the petitioner in that case said that he had been arrested when, in fact, he had been arrested, but this court determined that because of the fact that it wouldn't, that the outcome would not have been different, that this wasn't a material misrepresentation. And it would be the same in this case. Let's go back. If it's objective, I'm not sure it is, but if it is objective, and they turn out, there's the marriage certificate, and then all the surrounding testimony is deemed to be not credible, aren't you left with the objective fact that you've got a marriage certificate and a marriage and nothing demonstrating irregularities that's deemed to be credible and marriage is out the window? Are you saying, in other words, that if he had disclosed that he had been, that there had been a marriage, then that would have enabled them to have gone into the issue of the petition? No. I mean, at the hearing with IJ, they have the certificate or contract, whatever you want to call that. Right. They have that evidence. All of his explanations surrounding that are thrown out, in effect, as not being credible. So if objective is the standard, what's he standing on? Well, he's standing on the fact that the judge never, I mean, where the judge says he was incredible on this and that, the judge never said that he was incredible when he said that he was, when he was before the counselor office saying that he was unmarried. He said he was incredible when he said that he hadn't signed the G325 and much of a, you know, whatever was going on with this thing. In other words, the judge found that he was in cahoots with the rest of his family, even though he was in the Philippines. He found it incredible when he was trying to distance himself from what else was going on. But the judge never found he was incredible in his state of mind when he told the counselor office that, in fact, he wasn't married. And that's the real important thing here. If the pleadings of the service had reflected some overarching scheme in this thing, saying that he had, he was trying to defraud the service by filing a bogus, being in cahoots with Rosalinda Fidel filing a bogus petition, that would be one thing. But the only issue... I said I have your point then. Pardon? I said I have your point. I understand what your point is. Yeah. And you're over your time. I know. Thank you very much for your argument, counsel. The case just argued will be submitted for decision and we'll proceed.
judges: Hawkins, Thomas, McKeown